**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISON**

**ROBERT MILLER, JR.,**

      **Plaintiff,**

**vs.**

**CREDIT CONTROL, LLC,**

      **Defendant.**

_____/

**CASE NO.:**

3:18-cv-789-J-39JRK

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ROBERT MILLER, by and through undersigned counsel, hereby sues the Defendant, CREDIT CONTROL, LLC, and in support thereof respectfully, alleges the following:

1.  Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), the Federal Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## INTRODUCTION

2.  The TCPA was enacted to prevent companies like CREDIT CONTROL, LLC, from invading American citizens' privacy and prevent abusive "robo-calls."

3.  The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *See Mims v. Arrow Fin. Servs., LLC.,* 132 S.Ct. 740, 745 (2012).

1

4.  "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *See Mims* at 752 (*quoting* 137 Cong. Rec. 30, 821 (1991)). Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5.  According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

### JURISDICTION AND VENUE

6.  This is an action for damages exceeding fifteen thousand dollars ($15,000.00), exclusive of interest, attorney's fees and costs.

7.  Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8.  Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. §

227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

9.   Venue is proper in this District because the Plaintiff resides in this District (Clay County, Florida), the phone calls were received in this District and the Defendant transacts business in Clay County, Florida.

## FACTUAL ALLEGATIONS

10.  Plaintiff ROBERT MILLER, JR. is a natural person, and citizen of the State of Florida, residing in Clay County, Florida, and resides in this District.

11.  Plaintiff, ROBERT MILLER, JR. is a "consumer" as defined in Fla. Stat. § 559.55(2).

12.  Plaintiff ROBERT MILLER, JR. is an "alleged debtor."

13.  Plaintiff ROBERT MILLER, JR. is a "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

14.  Defendant is a "debt collector" as defined by Fla. Stat. § 559.55(6). Defendant sought to collect a debt from Plaintiff.

15.  The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(1).

16.  Defendant, CREDIT CONTROL, LLC, is a limited liability company which was formed in Missouri with its principal place of business at 5757 Phantom Drive, Suite 330 Hazelwood, MO 63042 and conducting business in the State of Florida.

17.  The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, in Clay County, Florida, by the Defendant's placing of illegal calls to Clay County, Florida.

18.  Defendant, at all material times, was attempting to collect on a credit card account debt

entered into by Plaintiff, ROBERT MILLER JR. (hereinafter the "subject account"), which was originally issued and serviced by Barclay's Bank Delaware, but was then moved by Barclay's into collections to Defendant.

19.   Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calls to: Plaintiff's Cell Phone and Plaintiff's wife's Cell Phone.

20.   Defendant called these numbers multiple times, despite *clear* requests from the Plaintiff to stop calling, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

21.   Upon information and belief, and with the understanding that most of the numbers called did not even belong to the debtor on the subject account, some or all of the calls the Defendant made to Plaintiff's cellular telephone numbers were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C.§ 227(a)(1) (hereinafter "autodialer calls").  Plaintiff will testify that there was a pause before a live person came on the line.

22.   Each of the autodialer calls the Defendant made to Plaintiffs' cellular telephone numbers was done after they had revoked consent *multiple times* and without the "prior expressed consent" of the Plaintiff.

23.   Plaintiff ROBERT MILLER, JR. is the regular user and carrier of the cellular telephone number 904-962-4586, and was a called party and recipient of Defendant's autodialer calls.

24.   Plaintiff's wife, Elizabeth Miller, is the regular user and carrier of the cellular telephone

4

number 904-446-5677 and was a called party and recipient of Defendant's autodialer calls.

25. Defendant used an autodialer and called Plaintiff on multiple times on his cell phone after revocation for an extended period of time, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

26. The autodialer calls from Defendant came from multiple telephone numbers, including 1-877-431-7784, 1-866-417-5778, and 1-877-431-7784, among others.

27. Further, Defendant called Plaintiff while at work, and called Plaintiff's wife's cellphone on multiple occasions, despite being unrelated to the debt.

28. Beginning in May 2, 2018, at approximately 11:26 AM EST, Plaintiff individually told a representative from Defendant that he revoked consent or told Defendant to stop calling him.

29. Since then, Plaintiff has told representatives from Defendant to stop calling him multiple times but the calls have continued, including but not limited to: May 7, 2018; May 8, 2018; May 10, 2018; May 25, 2018; May 31, 2018; June 5, 2018; June 6, 2018; and June 12, 2018.

30. Despite Plaintiff instructing the Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone kept occurring.

31. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond, when Plaintiff first advised Defendant to stop calling him.

32. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individuals, like Plaintiff, advising Defendant to stop calling.

33. Defendant's corporate policy provided no means for the Plaintiff to have his cellular

number, or those of his friends or family members, removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff and his friends and family members.

34.   Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

35.   Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call the wrong people or people who have revoked consent to be called.

36.   Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

37.   Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

38.   Due to Defendant's constant autodialer calls and demands for payment, Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA – ROBERT MILLER, JR.)

39.   Plaintiff ROBERT MILLER, JR. re-alleges and incorporates Paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

40.   None of Defendant's autodialer calls placed to Plaintiff ROBERT MILLER, JR. were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

41.   Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's

cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent.

42. The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in May 2018, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him, and told Defendant to stop calling him.

43. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff ROBERT MILLER, JR. respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CREDIT CONTROL, LLC, for statutory damages, actual damages, treble damages, punitive damages, costs, interest, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA – ROBERT MILLER, JR.)

44. Plaintiff ROBERT MILLER, JR. incorporates Paragraphs one (1) through thirty-eight (38) above as if fully set forth herein.

45. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

46. By continuing to contact Plaintiff ROBERT MILLER, JR. during all hours, multiple times a day, as well as calling Plaintiff's wife who was not on the debt, the Defendant violated the Florida Consumer Collection Practices Act, specifically:

a. "… willfully engage in other conduct which can reasonably be expected to abuse or

harass the debtor or any member of her or his family. " Florida Statute §559.72(7)

47.   Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

WHEREFORE, Plaintiff ROBERT MILLER, JR. respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CREDIT CONTROL, LLC, for statutory damages, punitive damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FDCPA – ROBERT MILLER, JR.)

48.   Plaintiff ROBERT MILLER, JR. incorporates by reference paragraphs one (1) through thirty-eight (38) of this Complaint as though fully stated herein.

49.   The Defendant is a debt collector as defined by the Fair Debt Collection Practices Act (FDCPA). § 15 USC 1692 803(6). The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

50.   The foregoing acts and omissions of Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, 15 U.S.C § 1692d, (Any conduct the natural consequence of which is to harass, oppress, or abuse any person); 15 U.S.C. § 1692c(a)(1) ("Communication with the consumer generally. . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer"); 15 U.S.C. § 1692c(a)(3) ("Communication with the consumer. . . at the consumer's place of employment if the debt collector knows or has reason to know that

the consumer's employer prohibits the consumer from receiving such communication");
and 15 U.S.C. §1692c(b) ("[Communication with third parties] without the prior consent
of the consumer given directly to the debt collector").

51. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages
pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00
pursuant to 15 U.S.C. § 1692k(a)(2)( A): and reasonable attorney's fees and costs
pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

**WHEREFORE**, Plaintiff ROBERT MILLER, JR. respectfully demands a trial by jury
on all issues so triable and judgment against Defendant, CREDIT CONTROL, LLC, for statutory
damages, actual damages, treble damages, punitive damages, costs, fees, interest, and any other
such relief the court may deem just and proper.

## TRIAL BY JURY

52. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so
triable.

## SPOILATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates
safeguard all relevant evidence – paper, audio recordings, electronic documents, or data –
pertaining to this litigation as required by law.

Dated this 21st day of June, 2018,

**MAX HUNTER STORY, P.A.**

/s/ Max Story
Max Story, Esquire
Florida Bar No. 0527238
Austin J. Griffin, Esquire
Florida Bar No. 117740
328 2ND Avenue North

Jacksonville Beach, Florida  32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff